STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ALEXANDRA SHEPARD (CABN 205143)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    alexandra.shepard@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR-20-0458 BLF |
| Plaintiff, | UNITED STATES SENTENCING MEMORANDUM |
| v. | Judge: Hon. Beth Labson Freeman |
| JOSE MELCHOR CAMPOY, | Sentencing Date: May 3, 2022 |
| Defendant. | Time: 9:00 a.m. |

## I.    INTRODUCTION

Jose Campoy was a trusted lieutenant and drug distributor for his father, David Campoy, leader of one of the most prolific drug trafficking organizations in Northern California and on the West Coast. Campoy was more than just a young, impressionable son who trafficked in large quantities of drugs in a quest to earn love and attention from a manipulative father. He admitted in his plea agreement to participating in the drug trafficking conspiracy and to being responsible for over 99 pounds of methamphetamine and 201 grams of heroin, and should be sentenced accordingly.

The U.S. Probation Office calculated Campoy's final offense level, inclusive of safety valve, as a level 33. At a Criminal History Category I, this results in an advisory Guidelines range of 135-168 months. The government recommends that this court impose a sentence of 115 months in custody,

followed by three years of supervised release. This below-Guidelines sentence is a substantial punishment which reflects the quantity of drugs involved and Campoy's active participation in the conspiracy, but also considers mitigating factors, specifically Campoy's age at the time of the offense (approximately 20-21 years old), and his lack of criminal history.

## II.   PROCEDURAL POSTURE

On December 3, 2020, a federal grand jury returned an Indictment charging Jose Campoy, David Campoy and three co-conspirators with conspiring to traffic methamphetamine and heroin in the Bay Area. Dkt. 1. On February 4, 2021, the grand returned a 23-count Superseding Indictment charging Jose Campoy, David Campoy, and 12 other defendants with conspiracy to traffic multiple drugs including methamphetamine and heroin. Dkt. 27. On February 18, 2021, the grand jury returned a Second Superseding Indictment ("SSI") which added an additional defendant to the conspiracy.

Jose Campoy was charged in the SSI with participating in the conspiracy (Count 1), possession with intent to distribute methamphetamine and heroin (Counts 2, 3, and 8), and using a communication facility to engage in drug trafficking (Count 12). Dkt. 66. Jose Campoy was arrested on January 27, 2021. On January 4, 2022, Campoy entered a guilty plea to Count One of the SSI pursuant to a written plea agreement with the government. Dkt. 173.

## III.   SENTENCING GUIDELINES CALCULATION

In paragraph two of the plea agreement, Campoy admitted to participating in a conspiracy to distribute methamphetamine, heroin and other drugs as charged in Count 1 of the SSI. He stipulated to quantities of drugs associated with his participation in the conspiracy: 99.4 pounds of methamphetamine and 201 grams of heroin, which together equal 90,013.80 kilograms of converted drug weight. As calculated by Probation, the base offense level as supported by the recitation of facts in the plea agreement is a level 38.

The government anticipates that by the time of sentencing Campoy will have satisfied the statutory requirements of the federal safety valve set forth in 18 U.S.C. § 3553(f). As a result, this Court will not be bound by the 10-year (120-month) mandatory minimum applicable to the statute of conviction. In addition, a two-level reduction for safety valve relief would apply under U.S.S.G. § 5C1.2.

Accordingly, assuming that Campoy fully satisfies the safety valve requirements by the time of sentencing, the applicable Guidelines calculation is as follows:

    a. Base Offense Level (U.S.S.G. §§ 2D1.1(a)(5)):    38
       (More than 90,000 kilograms of converted drug weight)
    b. Acceptance of Responsibility (U.S.S.G. § 3E1.1(a):    - 3
    c. Safety Valve (U.S.S.G. § 5C1.2):    -2
    d. Final Offense Level    33

The parties and Probation agree that Campoy is a Criminal History Category I, resulting in an advisory Guidelines range of 135-168 months. The government's recommendation of a 115-month sentence reflects Campoy's qualification for safety valve relief and constitutes a two-level departure from the bottom of the Guidelines range.

## IV. FACTUAL BACKGROUND

As described in the Presentence Report ("PSR") and in further detail below, Jose Campoy was actively involved in trafficking methamphetamine and heroin as part of his father's large drug trafficking organization. PSR ¶ 32-35. As he admitted in his plea agreement, Campoy received orders for narcotics from other members of the conspiracy, accepted deliveries of narcotics for the conspiracy, and delivered controlled substances to other members of the conspiracy. Plea Agreement at ¶ 2.

However reluctant Jose Campoy might have been at the outset of his participation in the conspiracy, by March 1, 2020 he had fully embraced his role and knew he was trafficking drugs. As charged in Count 12 of the SSI and described in the PRS, Jose Campoy called co-defendant Ignacio "Nacho" Espinoza on that date and discussed increasing methamphetamine prices; the call was recorded during the government's interception of a telephone belonging to Espinoza. The following is a transcription of the relevant portion of the call; the full transcript is attached at Exhibit A.

| NAME | TRANSLATION |
|---|---|
|  | [Telephone rings] |
|  | **[Beginning of call]** |
| ESPINOZA | Hey? [Background: Noises] |
| Jose CAMPOY | Yeah? |

| ESPINOZA | I wanted to… Hey, when, when's your dad getting back? |
|---|---|
| Jose CAMPOY | I have no clue. It should be… |
| | [Voices overlap] |
| ESPINOZA | Fuck! |
| Jose CAMPOY | …today though, but I don't know what time today. |
| | [Voices overlap] |
| ESPINOZA | Fuck, dude! Cuz fuck, I [Stutters] um, by any chance, I think, uh I think last time I talked to your pops was before he left, fucking, he said that, you guys, he was out, out like he was out, like out [Stutters] of, out of the market. Like he was dry. |
| Jose CAMPOY | Um-hum. |
| ESPINOZA | Is it dry? Cuz I actually need two (2) right now and I can't get a hold of it anywhere else. |
| Jose CAMPOY | Yeah, I know. We're out right now, too. |
| ESPINOZA | Yeah. |
| Jose CAMPOY | Yeah. Everywhere, everyone, everyone's uh, running out right now. |
| ESPINOZA | I know. [Chuckles] I've started to look and shit cuz fucking, the prices have gone up. And I need more money. |
| Jose CAMPOY | Yeah. Yeah. |
| | [Voices overlap] |
| ESPINOZA | Yeah. |
| Jose CAMPOY | He said the prices, the price should go up cuz everyone's running out. |
| | **[NON-PERTINENT PORTIONS OMITTED]** |
| ESPINOZA | Yeah, I got, I got to [U/I] this dude right now. He's fucking bugging me. He wants two (2). I'm not going to make much you know, but I could probably make like six (6), seven-hundred (700) bucks, yo. |
| Jose CAMPOY | Yeah, well raise it up on him. Be like, "Dude, look, there's no more." You know. |
| ESPINOZA | Nah, yeah [Chuckles]. That's what I'm about to say. I'm about to fucking, [U/I]… |
| Jose CAMPOY | Yeah, talk to him. Be like, "You know what, there's no more. I'm uh have to sell it to you for a little bit more." |

During the call, Espinoza asked Campoy when his father, David Campoy, was returning.[1] Espinoza said the last time he spoke to David Campoy, David Campoy had indicated that he was "dry," that is, that he did not have any narcotics available. Espinoza asked if Jose Campoy had any narcotics, because Espinoza needed two kilograms of methamphetamine and was unable to source it from anyone else. Jose Campoy told Espinoza, "we're out right now, too." Jose Campoy further indicated that there was a general shortage of methamphetamine, telling Espinoza, "Everywhere, everyone, everyone's uh, running out right now." He told Espinoza that "he," presumably David Campoy, "said the prices, the price should go up cuz everyone's running out." When Espinoza said he had a customer who wanted two kilogram of methamphetamine, Jose Campoy told him, "Yeah, well raise it up on him. Be like, "Dude, look, there's no more." You know." He went on to tell Espinoza, "Yeah, talk to him. Be like, "You know what, there's no more. I'm uh have to sell it to you for a little bit more." By March 1, 2020, therefore, Espinoza must have known he could call Jose Campoy to try to source drugs and discuss prices when David Campoy was unavailable. Jose Campoy, in turn, must have felt comfortable enough as his father's proxy to tell Espinoza not just to raise prices, but what to say to his customer.

The PSR describes additional instances of Campoy's involvement in the conspiracy. For example, on June 17, 2020 Jose Campoy picked up a Kia Soul with a hidden compartment from the parking lot of a Target store in San Jose and drove the car to a residence in San Jose. With the assistance of co-defendant Kimberly Carrasco, one of his David Campoy's girlfriends, he unloaded a substantial quantity of methamphetamine from the floorboard area of the car. In several trips between the Kia Soul, the residence, and a Jeep Wrangler, he ultimately loaded 99.4 pounds of methamphetamine into the Jeep Wrangler. PSR ¶ 32. Campoy then sent Carrasco out onto the street in the Jeep Wrangler, where she was promptly arrested for carrying the 99.4 pounds of methamphetamine. PSR ¶ 32.

Undeterred by this large seizure or Carrasco's arrest, Campoy continued to participate in the conspiracy. As described in the PSR and as charged in Count 8 of the SSI, on or around August 28, 2020, Jose Campoy participated with David Campoy and others in processing a shipment of

---

[1] In a recorded call on February 27, 2020, transcribed at Count 11 in the SSI, David Campoy and Espinoza discussed increasing methamphetamine prices; at the end of the call, David Campoy told Espinoza that he was traveling to Phoenix the next morning.

methamphetamine at a hotel in San Jose.  PSR ¶ 35.  He picked up a cooler filled with packages of methamphetamine from one of the family residences, brought the cooler to the hotel, and assisted his father and others in repackaging the methamphetamine in smaller quantities.  *Id*.

Days later, on the evening of September 1, 2020, Jose Campoy was forced to abandon a package of heroin he was delivering to co-defendant David Greenman in San Francisco when he realized he was being surveilled by law enforcement.  PSR ¶ 33.  Earlier that evening, at approximately 9:32 p.m., Jose Campoy called David Campoy on an intercepted line, Target Telephone 8, and told him he was about to head out; presumably to deliver the heroin to Greenman.  He called David Campoy back at 9:36 p.m. and they had the following conversation, also attached as Exhibit B:

| NAME | TRANSLATION |
| --- | --- |
| Jose CAMPOY | I forgot to tell you, he asked for China but I don't think you had any over there, huh? |
| David CAMPOY | No. Tell him, ah tomorrow or the next day. |
| Jose CAMPOY | Mm okay. |
| David CAMPOY | And so how many, and how much is he gonna want? |
| Jose CAMPOY | Ah? |
|  | [Voices overlap] |
| David CAMPOY | And how… |
| Jose CAMPOY | I think he's taking ten (10) for right now like you said. He didn't really say specifically. |
| David CAMPOY | Yeah I know. Oh yeah.  Oh, I'm going to send um… ten (10) or yeah…he owes seventeen (17). I feel like sending him… Why don't we send him… eight (8). |
| Jose CAMPOY | Okay. |
| David CAMPOY | Eight (8) and tell him that's all we had, and then that we'll talk to him and… |
| Jose CAMPOY | Okay. |
| David CAMPOY | Okay.  And then tell him, tell him well Ray says, that we don't even know where you live, right now, and you know. I don't know. |
| Jose CAMPOY | Yeah. |

"China" is a type of heroin; based on context, agents believe that "he" was David Greenman.  Agents

know that "Ray" was the name that David Campoy used with David Greenman.

At approximately 10:59 p.m., Jose Campoy called David Campoy back and in a series of conversations stretching over an hour, advised David Campoy that he spotted what he believed to be vehicles following him. He described taking a series of countersurveillance measures, including getting off and back on the highway, slowing his vehicle down, and stopping at various locations. Target Telephone 8, Call #s 529-533. He told David Campoy he had stopped for food at McDonald's and was "Just chillin,' looking at the parking lot" where he believed the people following him were located. Call #530. After David Campoy told him they needed to come up with a place Jose Campoy could hide the heroin he was transporting, Jose Campoy suggested the details: he would wrap the heroin in the McDonald's bag, and "then just tossing it like if it's trash 'cause I just ate." *Id*. He also proposed keeping a second phone he had with him "under my leg so they don't [U/I] if they're listening through my phone." Call #534. This is the conduct of a drug trafficker seeking to avoid detection or arrest while he was carrying almost half a pound of heroin—not, as he describes himself in his statement, a young man scared for his life. Jose Campoy Corrected Statement ¶ 15.

## V. GOVERNMENT'S SENTENCING RECOMMENDATION

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin by calculating the correct sentencing range under the Sentencing Guidelines. Id. The Guidelines are "the 'starting point and the initial benchmark,'" *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011) (quoting *United States v. Kimbrough*, 552 U.S. 85, 108 (2007)), and the Court should "remain cognizant of them throughout the sentencing process." *United States v. Gall*, 552 U.S. 38, 50 n.6 (2007). After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93. Here, the most important considerations are the nature and circumstances of the offense and the need to reflect the seriousness of the offense, and the history and characteristics of the defendant,. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A).

Probation recommends a five-year sentence, a full seven levels below the bottom of the Guidelines range. This is a significant discount which is not warranted by the facts here. The

Government recommends instead that the Court impose a 115-month prison sentence, two levels below the bottom of the Guidelines range.

The indictment alleges, and Jose Campoy admitted taking an active role in, a large drug trafficking ring. To provide the Court with a sense of the scope of the conspiracy, at the time of David Campoy and Jose Campoy's arrest, law enforcement seized approximately 572 pounds of methamphetamine, several pounds of heroin, and 16 firearms from their residence locations. The government does not allege that Jose Campoy was a leader or organizer in this conspiracy, but as described above and in the PSR, he was more than just a simple courier or street dealer. He was his father's deputy. He discussed prices, took orders and deliveries, and brought drugs to co-conspirators for resale. He was personally involved in moving almost 100 pounds of methamphetamine in just one day.

In the statements he submitted with his sentencing memo, Campoy attempted to minimize his culpability. For example, in his original statement, Jose Campoy attempted to recast his March 1, 2020 phone call with Ignacio Espinoza as a simple game of telephone. In the statement, Jose Campoy alleged that "Nacho" called him, looking for David Campoy, while he was in the car with David Campoy going to get lunch. He claimed he told Espinoza that Campoy was there with him, and that when Espinoza began to ask him questions about the "prices of the drugs he was selling," his father told him what to say. However, this is a wiretap case; Campoy's own words are captured on recordings. In addition, the line sheets indicate that Jose Campoy called Nacho. More to the point, the evidence indicates that David Campoy was out of town, not next to Jose Campoy telling him what to say like a puppet. This explains why Nacho asked Jose Campoy when his father was getting back, why Jose Campoy told Nacho he didn't know but thought it would be that day, and why, at the end of the call, he told Nacho he was about to head out with his mom.

When the undersigned advised counsel that the sequence of events in Paragraph 6 was not supported by the evidence, counsel then filed the Corrected Statement. The Corrected Statement contains an edited version of the facts in Paragraph 6 but no other changes. It appears that in the edited version of Paragraph 6, Jose Campoy suggests that there might have been two phone calls, and that in the March 1 phone call he made to Espinoza, he was simply repeating what his father told him to say

shortly before he left town. The government notes for the record that it has reviewed the line sheets for Espinoza's phone, which was intercepted from February 25, 2020 through March 25, 2020, and identified only the one phone call described above between Jose Campoy and Espinoza regarding narcotics.

Campoy has in other ways taken responsibility for his actions, including by being the first defendant in this case to plead guilty, by making detailed admissions in his plea agreement, and by making a good faith effort to engage in the safety valve process. He should not now, at this late stage, try to minimize his culpability. His words speak for themselves.

The Government agrees with Probation that Campoy's age and lack of criminal history are mitigating factors. The materials submitted with the defendant's sentencing memorandum suggest that Jose Campoy did seem to want to develop a relationship with his father, who happened to be a major drug trafficker. However, none of these circumstances justify a seven-level departure from the Guidelines, or counsel's recommendation of probation. Jose Campoy could have withdrawn from the conspiracy, walked away from his father and found another place to live if his mother wouldn't take him back, but as Probation correctly noted in the PSR, he did not. Instead, he became a drug trafficker like his father. This offense demands a significant, serious punishment, one that deters other people in his situation from engaging in similar conduct.

## VI. CONCLUSION

The United States respectfully requests that this Court impose a sentence of 115 months' imprisonment, followed by three years of supervised release, and a mandatory $100 special assessment.

DATED:      April 27, 2022                           Respectfully submitted,

                                                     STEPHANIE M. HINDS
                                                     United States Attorney

                                                      /s/ Alexandra Shepard
                                                     ALEXANDRA SHEPARD
                                                     Assistant United States Attorney

# EXHIBIT A

# San Jose Resident Office



# Transcription/Translation

| | |
|---|---|
| Case#: | |
| Target: | Ignacio Espinoza |
| Target Telephone: | 0330 |
| Call#: | 982 |
| Direction: | Incoming |
| Digits: | 3188 |
| Subscriber: | N/A |
| Date: | March 1, 2020 |
| Time: | 13:47:56 |
| Participants: | Ignacio Espinoza a.k.a. Nacho [ESPINOZA] |
| | Unknown Male [UM] |
| Transcriber/Translator: | |
| Reviewed By: | |

**Legend:**
[]      =Brackets are used to separate the transcriber's/translator's remarks from the original words spoken.
[U/I]   =Unidentified, Unintelligible diction.
[PH]    =Phonetic transcription.

Words pronounced in English within a portion of the transcription that is predominantly in Spanish have been *italicized* or vice versa.

Call#: 982
Line#: 0330

Page 1 of 4

| NAME | TRANSLATION |
|---|---|
| | [Telephone rings] |
| | **[Beginning of call]** |
| ESPINOZA | Hey? [Background: Noises] |
| UM | Yeah? |
| ESPINOZA | I wanted to… Hey, when, when's your dad getting back? |
| UM | I have no clue. It should be… |
| | [Voices overlap] |
| ESPINOZA | Fuck! |
| UM | …today though, but I don't know what time today. |
| | [Voices overlap] |
| ESPINOZA | Fuck, dude! Cuz fuck, I [Stutters] um, by any chance, I think, uh I think last time I talked to your pops was before he left, fucking, he said that, you guys, he was out, out like he was out, like out [Stutters] of, out of the market. Like he was dry. |
| UM | Um-hum. |
| ESPINOZA | Is it dry? Cuz I actually need two (2) right now and I can't get a hold of it anywhere else. |
| UM | Yeah, I know. We're out right now, too. |
| ESPINOZA | Yeah. |
| UM | Yeah. Everywhere, everyone, everyone's uh, running out right now. |
| ESPINOZA | I know. [Chuckles] I've started to look and shit cuz fucking, the prices have gone up. And I need more money. |
| UM | Yeah. Yeah. |
| | [Voices overlap] |
| ESPINOZA | Yeah. |
| UM | He said the prices, the price should go up cuz everyone's running out. |
| | [Voices overlap] |

Call#: 982
Line#: ▮▮▮▮▮▮0330

3

| ESPINOZA | Yeah, yeah, yeah, its's good. Yeah, it's good. |
| --- | --- |
| UM | Yeah. |
| ESPINOZA | [Background: UF: *[U/I] guey.*]<br><br>[Aside: Nacho: *[U/I]*]<br><br>[Background: UF: *U/I*]<br><br>[Aside: Nacho: *Whatever he wants to send him.*]<br><br>[Background: UF: *Of the [U/I], or?*]<br><br>[Aside: Nacho: *Whatever he wants.*]<br><br>[Addresses UM] Hello? |
| UM | Yeah? |
| ESPINOZA | Fucking, um… Fuck, dude! |
| UM | Yeah. [Chuckles] |
| ESPINOZA | Yeah, I got, I got to [U/I] this dude right now. He's fucking bugging me. He wants two (2). I'm not going to make much you know, but I could probably make like six (6), seven-hundred (700) bucks, yo. |
| UM | Yeah, well raise it up on him. Be like, "Dude, look, there's no more." You know. |
| ESPINOZA | Nah, yeah [Chuckles]. That's what I'm about to say. I'm about to fucking, [U/I]… |
| UM | Yeah, talk to him. Be like, "You know what, there's no more. I'm uh have to sell it to you for a little bit more." |
| | [Voices overlap] |
| ESPINOZA | *Yeah, but the problem,* the problem is that he's in Ceres. He's not from here, you know. But, he's from like an hour and a half (1½) away and he's out here visiting to pick up two (2). |
| | (Voices overlap) |
| UM | Yeah. |

Call#: 982
Line#: ▇▇▇▇0330

4

| ESPINOZA | Yeah. Fuck! I'm all thinking over here, hella hard, dog! Fucking, who the fuck? I know somebody, but I can't fucking find this motha-fucker's number! |
| --- | --- |
| UM | Yeah. |
| ESPINOZA | Yeah. Where you at right now? |
| UM | Um, I'm about to head out with my mom real quick. |
| ESPINOZA | Yeah? All right. |
| UM | Yeah, [U/I] |
| ESPINOZA | *Well, call me when you are free so I can invite you to eat, or something, man!* |
| UM | Okay. All right. |
| ESPINOZA | Call me. I got you. Don't trip. I'm right here at Girasol if you wanna come grab something to eat. [Background: Music] |
| UM | All right, yeah. Sounds good. I'm probably gonna [U/I] in a little bit. |
| ESPINOZA | All right. [Background: Music] |
| UM | All right. Later. |
| | **[End of call]** |

Call#: 982
Line#: 0330

# EXHIBIT B

# San Jose Resident Office



## Transcription/Translation

| | |
|---|---|
| Case#: | |
| Target: | David Campoy |
| Target Telephone: | 7722 |
| Call#: | 528 |
| Direction: | Incoming |
| Digits: | 7826 |
| Subscriber: | N/A |
| Date: | September 01, 2020 |
| Time: | 21:36:50 |
| Participants: | David Campoy   [DAVID] |
| | Jose Campoy    [JOSE] |
| | |
| Transcriber/Translator: |  |
| Reviewed By: | |

**Legend:**

[ ]   =Brackets are used to separate the transcriber's/translator's remarks from the original words spoken.
[U/I]   =Unidentified, Unintelligible diction.
[PH]   =Phonetic transcription.
[sic]   =The preceding is written intentionally or is copied verbatim from its original, even if it appears to be a mistake.

Words pronounced in English within a portion of the transcription that is predominantly in Spanish have been *italicized* or vice versa.

Line#:**Error! Reference source not found.**Call#: **Error! Reference source not found.**

Page 2 of 3

| NAME | TRANSLATION |
|---|---|
| | **[Beginning of call]** |
| JOSE | Okay. [Pause] |
| DAVID | Yeah. |
| JOSE | I forgot to tell you, he asked for China but I don't think you had any over there, huh? |
| DAVID | No. Tell him, ah tomorrow or the next day. |
| JOSE | Mm okay. |
| DAVID | And so how many, and how much is he gonna want? |
| JOSE | Ah? |
| | [Voices overlap] |
| DAVID | And how… |
| JOSE | I think he's taking ten (10) for right now like you said. He didn't really say specifically. |
| DAVID | Yeah I know. Oh yeah.  Oh, I'm going to send um… ten (10) or yeah…he owes seventeen (17). I feel like sending him… Why don't we send him… eight (8). |
| JOSE | Okay. |
| DAVID | Eight (8) and tell him that's all we had, and then that we'll talk to him and… |
| JOSE | Okay. |
| DAVID | Okay.  And then tell him, tell him well Ray says, that we don't even know where you live, right now, and you know. I don't know. |
| JOSE | Yeah. |

Line#:**Error! Reference source not found.**Call#: **Error! Reference source not found.**

Page 2 of 3

3

| DAVID | Okay bye. |
|---|---|
| JOSE | Okay bye. |
|  | **[End of call]** |

Line#:**Error! Reference source not found.**Call#: **Error! Reference source not found.**